UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>AVIS BUDGET GROUP, INC., *et al.*,<br><br>Defendants. | Case No. 1:17-cv-00211-DAD-EPG<br><br>**ORDER FINDING COGNIZABLE CLAIMS**<br><br>**ORDER FOR PLAINTIFF TO:**<br><br>**(1) NOTIFY THE COURT THAT HE IS WILLING TO PROCEED ONLY ON THE CLAIMS FOR BREACH OF CONTRACT AGAINST AVIS AND CAPITAL ONE; DEFAMATION AGAINST ARI; AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST AVIS, DAVIS, AND ARI;**<br><br>**(2) FILE A FIRST AMENDED COMPLAINT; OR,**<br><br>**(3) NOTIFY THE COURT THAT HE WISHES TO STAND ON HIS COMPLAINT, SUBJECT TO FINDINGS AND RECOMMENDATIONS TO THE DISTRICT JUDGE CONSISTENT WITH THIS ORDER**<br><br>(ECF No. 1)<br><br>**THIRTY (30) DAY DEADLINE** |

**I.     INTRODUCTION**

Plaintiff Edward Hernandez, proceeding *pro se* and *in forma pauperis*, filed a Complaint

1

on February 14, 2017. (ECF No. 1.) The Complaint alleges a variety of state law claims against Defendants Avis Budget Group, Inc. ("Avis"); Daphne Davis, an employee of Avis; Ford Motor Company, Inc. ("Ford"); Capital One Financial Corporation ("Capital One"); and Asset Retrieval and Investigations, Inc. ("ARI"). Plaintiff's claims arise out of the rental of a 2016 Ford Explorer from Avis. The Court has screened the Complaint. The Court finds that Plaintiff states a breach of contract claim against Avis and Capital One; a defamation claim against ARI; and a claim for intentional infliction of emotional distress against Avis, Davis, and ARI. Plaintiff fails to state a claim for other relief, and against the remaining defendants.

Plaintiff must respond to the Court within thirty days and has three options. He can notify the Court that he agrees to proceed only on the claims found cognizable in this order, in which case the Court will authorize service of the complaint to proceed only regarding the claims upheld in this order. Plaintiff may also file an amended complaint within thirty days if he believes that additional facts will establish any additional claims under the applicable legal standards. Finally, Plaintiff can state that he stands on this complaint, in which case this Court will issue findings and recommendations to the District Judge, recommending that certain claims and defendants be dismissed consistent with this order.

**II. LEGAL STANDARD**

Under 28 U.S.C. § 1915(e)(2), the Court must conduct a review of a *pro se* complaint to determine whether it "state[s] a claim on which relief may be granted," is "frivolous or malicious," or "seek[s] monetary relief against a defendant who is immune from such relief." If the Court determines that the complaint fails to state a claim, it must be dismissed. *Id.* Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual

matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id*. at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, *Hosp. Bldg. Co. v. Trs. of Rex Hospital*, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the Plaintiff, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

### III.  PLAINTIFF'S ALLEGATIONS

The Complaint alleges that on October 21, 2016, Plaintiff entered into a written agreement with Avis to rent a seven passenger vehicle with the largest cargo space available, a 2016 Ford Explorer. Plaintiff rented the Explorer from the Avis rental outlet at Roberts Field in Redmond, Oregon. On October 22, 2016 at approximately 4:00 p.m., while Plaintiff and his family were traveling at 72 miles per hour in the center lane of a freeway near Modesto, California, the Explorer lost all acceleration without warning. Plaintiff maneuvered the vehicle over to the side of the freeway through heavy traffic and called Avis to request a substitute vehicle. Avis told Plaintiff that a substitute vehicle would be sent from its Modesto location, 10 miles away from Plaintiff's location.

At about 5:30 p.m., Plaintiff called Avis and was informed that the substitute vehicle should be arriving shortly. At approximately 7:30 p.m., Plaintiff called Avis and was informed that the substitute vehicle had actually been sent from Avis's San Jose location, 100 miles away from Plaintiff's location.

At approximately 9:30 p.m., a tow truck driver called Plaintiff and stated that he was fifteen minutes away. The tow truck driver also stated that he had been dispatched to pick-up the Explorer, but had no information on any substitute vehicle. The tow truck driver further stated

that he would need to return to San Jose to retrieve a substitute vehicle and would return around 12:00 a.m. Plaintiff again called Avis, which advised Plaintiff to seek nearby accommodations.

On October 23, 2016 at approximately 3:00 p.m., Avis provided Plaintiff with a Kia Sorrento as a substitute vehicle. On October 24, 2016, Plaintiff informed Avis that the Sorrento lacked the storage capacity of an Explorer. Avis told Plaintiff that he could obtain a van at its Burbank location. Plaintiff traveled to Burbank, but no van was available. On October 27, 2016, Plaintiff was able to exchange the Sorrento for a Nissan Pathfinder at Avis's Fresno location.

On October 28, 2016, Plaintiff contacted Avis's Redmond office and informed them that he would need an extension to the term of his rental agreement. Avis informed Plaintiff that it would not extend the contract and that the vehicle must be returned immediately. On November 4, 2016 at approximately 7:30 p.m., Plaintiff left the Pathfinder at Avis's office in Redmond after hours, which he is authorized to do as a Budget FastBreak member, and informed Avis that he had returned the vehicle. Plaintiff followed up with a phone call to an Avis representative, Mr. Peterson, on November 7, 2016, to inform Avis that the vehicle had been returned.

On November 11, 2016, Avis sent Plaintiff a letter demanding the return of the Pathfinder and informing him that it would file a police report and seek a warrant for his arrest if the vehicle was not returned. On November 14, 2016, Defendant Daphne Davis called Plaintiff and informed him that the vehicle had not been located, and that it would begin "recovery proceedings" if the vehicle was not returned immediately. On November 29, 2016, Davis again notified Plaintiff that the vehicle had not been located, and that Avis would need to commence vehicle recovery options.

On November 30, 2016, Defendant ARI contacted Plaintiff and informed him that it had been retained to recover the vehicle. ARI also communicated with Plaintiff's "family, company employees, and known business associates" that Plaintiff had "embezzled vehicle and criminal charges would be filed against Plaintiff, if vehicle is not returned immediately." The next day, Plaintiff called ARI and was informed that Defendant Davis was "responsible for the aggressive recovery action."

On December 1, 2016, Avis charged Plaintiff's credit card without authorization in an

4

amount exceeding $3,300 for the rental of the vehicle from October 21, 2016 through December 1, 2016. Avis also placed Plaintiff on their "Do No Rent To List." Plaintiff disputed the $3,300 charge with Capital One, who promptly removed the charge.

On December 23, 2016, Avis informed Plaintiff that the vehicle had been returned, but was damaged. On January 5, 2017, Avis charged Plaintiff's credit card without authorization for $3,367.92. On the same day, Plaintiff was denied a charge of approximately $35.00. Plaintiff disputed the charge with Capital One, and Capital One removed the charge.

On January 10, 2017, Capital One authorized a fraudulent charge generated by Avis. On the same day, Plaintiff was denied a charge of approximately $8.00. Plaintiff again challenged the charge. Capital One stated that a secure link would be provided to allow Plaintiff to submit documentation to refute the disputed charge. But, rather than removing the charge, Capital One debited a second charge of $3,367.92 on Plaintiff's credit card, bringing Plaintiff's balance to $6,735.84. Plaintiff again disputed the charge.

On January 13, 2017, Plaintiff communicated with Capital One and requested the secure link. Capital One stated that the secure link would be provided, but Capital One did not provide the link.

Plaintiff alleges seven separate state law claims against various combinations of Defendants: (1) Breach of Contract (against Avis and Capital One); (2) Strict Product Liability (against Ford and Avis); (3) Negligence (against Ford and Avis); (4) Defamation (against Avis, Davis, and ARI); (5) Intentional Infliction of Emotional Distress (against Avis, Davis, ARI, and Capital One); (6) Negligent Infliction of Emotional Distress (against Avis, Davis, ARI, and Capital One); and (7) Negligent Interference with Prospective Economic Relations (against Avis and Capital One).

Plaintiff asks for compensatory and punitive damages against all Defendants, as well as injunctive relief against Ford in the form of a product recall.

**IV.    DISCUSSION**

    **A.  Breach of Contract (Avis and Capital One)**

Under California law, the elements of a breach of contract claim are: 1) existence of a

valid contract; 2) performance by the plaintiff or excuse for nonperformance; 3) breach by the defendant; and 4) damages. *First Commercial Mortgage Co. v. Reece*, 89 Cal.App.4th 731, 745 (2001). To state a cause of action for breach of contract, plaintiff must plead the terms of the contract either in verbatim or according to legal effect. *Langan v. United Servs. Auto. Ass'n*, 69 F.Supp.3d 965, 979 (N.D. Cal. 2014) (quoting *Twaite v. Allstate Ins. Co.*, 216 Cal.App.3d 239, 252 (1989)).

With respect to Defendant Avis, Plaintiff's complaint alleges that on or about October 21, 2016, Plaintiff and Avis entered into a contract for the rental of a seven passenger vehicle. (ECF No. 1 at 9.) "On Line Item 18 of the Rental Terms and Conditions Agreement, [Avis] guarantees roadside assistance." *Id.* at 10. Plaintiff "performed the duties required under the written agreement." *Id.* at 9. Avis breached the contract by failing to deliver a substitute vehicle in accordance with its roadside assistance guarantee. *Id.* at 10. Plaintiff suffered damages, including travel, lodging, and food expenses as a result of Avis' breach. *Id.* at 11. Thus, accepting the allegations in the complaint as true, Plaintiff states a claim for breach of contract against Avis.

With respect to Defendant Capital One, Plaintiff alleges that he had a cardholder agreement with Capital One, and that he has performed all duties required under the cardholder agreement. *Id.* at 10-11. Plaintiff alleges Capital One breached the cardholder agreement by (1) authorizing a fraudulent charge generated by Avis in the amount of $3,367.92 on January 5, 2017 in violation of provisions found within the credit provider agreement; (2) authorizing a fraudulent charge in amount of $3,367.92 on January 10, 2017 that was generated by Avis; (3) debiting Plaintiff's credit card for $3,367.92 instead of removing the charge in response to Plaintiff's dispute of charges, bringing Plaintiff's disputed balance to $6,735.84; (4) failing to provide Plaintiff with a secured link to provide Capital One with documentation to refute the disputed charge; and (5) failing to act in the best interest of a cardholder. *Id.* at 8-9, 11. Thus, accepting the allegations in the complaint as true, Plaintiff states a claim for breach of contract against Capital One.

**B. Strict Product Liability (Ford and Avis)**

Under California's strict products liability doctrine, a party involved in the vertical

6

distribution of products is strictly liable when a product it places on the market that proves to have a defect in the manufacture or design causes physical injury or property damage while the product is being used in a reasonably foreseeable way. *Jimenez v. Superior Court*, 29 Cal. 4th 473, 482 (2002); *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 560 (1994); *Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57, 62 (1963). "Damages available under strict products liability do not include economic loss, which includes 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property . . . .'" *Jimenez*, 29 Cal. 4th at 482 (citing *Sacramento Regional Transit Dist. v. Grumman Flxible*, 158 Cal.App.3d 289, 294 (1984)).

California recognizes strict liability for three types of product defects: manufacturing defects, design defects, and warning defects. *Anderson v. Owns-Corning Fiberglas Corp.*, 53 Cal.3d 987, 995 (1991). A manufacturing defect is "readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line." *Barker v. Lull Engineering Co.*, 20 Cal. 3d 413, 429 (1978). "The 'manufacturing defect' theory posits that 'a suitable design is in place, but that the manufacturing process has in some way deviated from that design.'" *Lucas v. City of Visalia*, 726 F.Supp.2d 1149, 1155 (E.D. Cal. 2010) (quoting *In re Coordinated Latex Glove Litig.*, 99 Cal.App.4th at 613. "To plead under this theory, 'plaintiffs should identify/explain how the [product] either deviated from [defendant's] intended result/design or how the [product] deviated from other seemingly identical [product] models.'" *Rodas v. Porsche Cars N. Am., Inc.*, No. CV143747PSGMRWX, 2015 WL 12762064, at *4 (C.D. Cal. Feb. 13, 2015) (citing *In re Coordinated Latex Glove Litig.*, 99 Cal. App. 4th 594, 613 (2002).

A product may be found defective in design under either of two tests: the "consumer expectations" test or the "risk-benefit" test. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 478 (2001); *Barker v. Lull Engineering Co.*, 20 Cal. 3d 413, 418 (1978). First, under the consumer expectations test, a product's design is defective if it fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. *Barker*, 20 Cal. 3d at 430. To plead under the consumer expectations test, plaintiffs must describe how the

product failed to meet the minimum safety expectations of an ordinary consumer of the product. *See Lucas*, 726 F. Supp. 2d at 1155. Second, under the risk-benefit test, "a product may be found defective in design, even if it satisfies ordinary consumer expectations, if . . . the risk of danger inherent in the challenged design outweighs the benefits of such design." *Barker*, 20 Cal. 3d at 430. To plead under the risk-benefit test, plaintiffs must allege that the risks of the design outweigh the benefits, and then "explain how the particular design of the product caused the harm." *Lucas*, 726 F. Supp. 2d at 1155.

Plaintiff alleges that while operating the vehicle in the manner intended and expected by Ford and Avis, the vehicle lost all acceleration without warning. (ECF No. 1 at 5, 13.) The vehicle would not accelerate, and Plaintiff was forced to maneuver the coasting vehicle through heavy, fast moving traffic to the side of the freeway. *Id.* at 5. Plaintiff further alleges that he "has suffered and continues to suffer actual damages and personal injury." *Id.* at 9.

Plaintiff plausibly pleads that the vehicle deviated from Ford and Avis's intended result as it lost acceleration while being operated in the manner intended. Plaintiff also plausibly pleads under the consumer expectations test that the vehicle failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner as it lost acceleration without warning. Plaintiff, however, fails to set forth factual allegations regarding any physical injuries or property damage he sustained. Plaintiff only sets forth factual allegations regarding economic loss. Plaintiff does state that he has suffered personal injury. But, this conclusory statement lacks sufficient factual matter to show that Plaintiff is entitled to relief. Thus, Plaintiff fails to state a claim for strict product liability against Ford and Avis.

**C. Negligence (Ford and Avis)**

California law "establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others." *Cabral v. Ralphs Grocery Co.*, 51 Cal.4th 764, 768 (2011); Cal. Civ. Code § 1714(a) (2012). "In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003).

\\\

8

### 1. Duty and Breach

To determine whether a duty of care exists, courts consider: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 804 (1979). Foreseeability means that the harm must be "sufficiently likely to arise from a given act," *Wawanesa Mut. Ins. Co. v. Matlock*, 60 Cal.App.4th 583, 588 (1997), and more than a "mere possibility" of occurrence is required. *Friedman v. Merck & Co.*, 107 Cal.App.4th 454, 465 (2003).

Plaintiff contends that Avis owed him a duty to rent a safe vehicle and to warn Plaintiff of any defects in the product. (ECF No. 1 at 13.) Plaintiff further alleges that this duty was breached in the provision of a defective vehicle. *Id.* Thus, Plaintiff plausibly alleges that Avis owed him a duty to exercise due care and breached that duty.

Plaintiff's allegations against Ford for breach of duty are similarly plausible. Plaintiff contends that Ford owed him a duty to design, manufacture, distribute, and sell vehicles that are safe, and to warn of any defects. Plaintiff further contends that Ford breached this duty by failing to design, manufacture, distribute, and sell vehicles without defects, and to warn of any defects. Manufacturers are liable for harm resulting from defective products. *Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 261 ("[R]esponsibility for defects, whether negligently or nonnegligently caused, [is placed] on the manufacturer of the completed product."). Thus, Plaintiff plausibly alleges that Ford owed him a duty of care and breached such duty.

### 2. Causation

California applies the "substantial factor" test for cause-in-fact determinations. *Rutherford v. Owens-Illinois, Inc.*, 16 Cal.4th 953, 968 (1997); *Mitchell v. Gonzales*, 54 Cal.3d 1041, 1049-52 (1991); *Soule v. General Motors Corp.*, 8 Cal.4th 548, 572 (1994). Under this test, a defendant's actions "may be the proximate cause of a plaintiff's injuries if those actions were a substantial factor in bringing them about." *Ileto*, 349 F.3d at 1206. While "[t]he substantial factor

standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical," *Rutherford*, 16 Cal.4th at 978, liability is limited "to those foreseeable consequences that the defendant's negligence was a substantial factor in producing." *Ileto*, 349 F.3d at 1206.

Ford's manufacture of a defective vehicle was a substantial factor leading to the sudden loss of acceleration Plaintiff experienced while operating the vehicle. Avis's provision of such a defective vehicle was also a substantial factor resulting in Plaintiff's alleged harm. Thus, Plaintiff plausibly alleges that Avis's and Ford's breaches of duty were substantial factors in bringing about his injuries.

### 3. Damages

"[I]n actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone." *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965). "[T]he detriment inflicted on the plaintiff must . . . be the natural and probable result of the defendant's conduct." *Chaparkas v. Webb*, 178 Cal.App.2d 257, 259 (1960) (citing *Wells v. Lloyd*, 6 Cal.2d 70, 86 (1936)).

Plaintiff alleges only conclusory statements that Avis's and Ford's actions resulted in damages and injuries. Plaintiff fails to set forth sufficient factual matter pertaining to any physical injury, beyond economic loss. Thus, Plaintiff fails to state a negligence claim against Avis or Ford.

### D. Defamation *Per Se* (Avis, Davis, and ARI)

Under California law, defamation may be in the form of libel or slander, Cal. Civ. Code § 44, and is defined as the "intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal.App.4th 637, 645 (1999). "A defamation *per se* claim is actionable without proof of special damages." *Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1183 (E.D. Cal. 2008).

California Civil Code § 46 provides:

> Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which:

> 1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;
>
> 2. Imputes in him the present existence of an infectious, contagious, or loathsome disease;
>
> 3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;
>
> 4. Imputes to him impotence or a want of chastity; or
>
> 5. Which, by natural consequence, causes actual damage.

"If a statement falls within § 46(1)-(4), it is considered defamatory *per se*." *Crowe v. Cty. of San Diego*, 608 F.3d 406, 442 (9th Cir. 2010).

California courts have adopted a negligence standard for private figure plaintiffs seeking compensatory damages in defamation actions. *Khawar v. Globe Int'l, Inc.*, 19 Cal. 4th 254, 274 (1998), as modified (Dec. 22, 1998). The negligence standard requires private figure plaintiffs to show that a defendant failed to use reasonable care to determine the truth or falsity of the allegedly defamatory statements. *Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711, 749 (1989). "[F]or recovery of either punitive damages or damages for presumed injury. . . . [t]he United States Supreme Court has held that to recover such damages, even a private figure plaintiff must prove actual malice if the defamatory statement involves matters of public concern. *Khawar*, 19 Cal. 4th at 274 (citing *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985) (plurality opinion). However, a private figure plaintiff need not prove actual malice to recover presumed or punitive damages if the defamatory publication was not on a matter of public concern. *Id.* at 274 (citing *Dun & Bradstreet, Inc.,* 472 U.S. at 774 (White, J., concurring)).

Plaintiff alleges that an agent representing Defendant ARI communicated with his "family, company employees, and known business associates" that he had embezzled the vehicle and criminal charges would be filed against him if he did not return the vehicle immediately. (ECF No. 1 at 7.) Plaintiff also stated that ARI identified Daphne Davis as the individual responsible for the aggressive recovery action. *Id.* at 7-8. Plaintiff further alleges that Defendants

Avis, Davis and ARI "knowingly, intentionally, willfully, or negligently" published to multiple parties a false statement accusing him of felonious criminal acts that "would cause severe damage to Plaintiff's reputation, legal career, business opportunities and social relationships" which they knew or should have known to be false. *Id.* at 14.

Plaintiff states a defamation claim against ARI. However, Plaintiff fails to state a defamation claim against Avis and Davis. Plaintiff does not set forth any factual allegations that Avis or Davis published false statements to third parties about him.

### E. Intentional Infliction of Emotional Distress ("IIED") (Avis, Davis, ARI, and Capital One)

"The elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendants with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1179-80 (E.D. Cal. 2008) (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001 (1993)). Extreme and outrageous conduct is that which is "so extreme as to exceed all bounds of that usually tolerated in a civilized community," *Potter*, 6 Cal.4th at 1001, and "of a nature which is *especially calculated to cause*, and does cause, mental distress of a very serious kind." *Christensen v. Super. Ct*, 54 Cal.3d 868, 905 (1991) (emphasis in original).

Plaintiff alleges that Avis's and Davis' conduct was intentional and/or negligent and extreme and outrageous, causing him to "suffer anguish and extreme emotional distress." (ECF No. 1 at 15.) ARI's conduct was "intentional, extreme and outrageous causing Plaintiff to suffer from mental anguish and extreme emotional distress." *Id.* And, Capital One's conduct was "intentional and/or negligent," and "extreme and outrageous, causing Plaintiff to suffer mental anguish, public embarrassment humiliation resulting in extreme emotional distress." *Id.* at 15-16.

Plaintiff states a claim of IIED against Avis, Davis, and ARI. Plaintiff, however, fails to state a claim for IIED against Capital One. Plaintiff fails to allege facts demonstrating that Capital One undertook any action to intentionally or recklessly cause Plaintiff emotional distress.

12

**F. Negligent Infliction of Emotional Distress ("NIED") (Avis, Davis, ARI, and Capital One)**

Under California law, there is no independent tort of NIED. *Burgess v. Super. Ct.*, 2 Cal.4th 1064, 1071-72 (1992). "NIED is instead a subset of negligence that extends the ability to recover damages to indirect victims who, while not suffering physical injury as the result of a tortfeasor's acts, nonetheless suffer severe emotional distress." G*ranger v. Lowe's Home Centers, LLC*, No. 114CV01212DADSKO, 2016 WL 1138175, at *4 (E.D. Cal. Mar. 23, 2016).

"In evaluating claims of negligent infliction of emotional distress, the California Supreme Court applies a test for reasonable foreseeability. The relevant inquiry is whether the risk of harm to the plaintiff from the negligent act of the defendant was reasonably foreseeable; if so, the defendant owes that plaintiff a duty to exercise due care." *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 737 (9th Cir. 1986). To recover damages for emotional distress that does not involve physical injury, a plaintiff must "show that the emotional distress was 'serious'." *Wong v. Tai Jing*, 189 Cal.App.4th 1354, 1377 (2010). "[S]erious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Molien v. Kaiser Found. Hosps.*, 27 Cal.3d 916, 928 (1980).

Plaintiff fails to allege any facts demonstrating that he was an indirect victim that suffered severe emotional distress due to Defendants' actions. Thus, Plaintiff fails to state a claim for NIED against any Defendant.

**G. Negligent Interference with Prospective Economic Relations (Avis and Capital One)**

"The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this

relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." *Venhaus v. Shultz*, 155 Cal.App.4th 1072, 1078 (2007). "[R]ecovery for negligent interference with prospective economic advantage will be limited to instances where the risk of harm is foreseeable and is closely connected with the defendant's conduct, where damages are not wholly speculative and the injury is not part of the plaintiff's ordinary business risk." *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 808 (1979). The plaintiff must prove that the defendant "not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 393 (1995); *Lange v. TIG Ins. Co.*, 68 Cal.App.4th 1179, 1187 (1998) ("For negligent interference, a defendant's conduct is blameworthy only if it was independently wrongful apart from the interference itself.").

Plaintiff contends that he was in an economic relationship with Academy Mortgage, Credit One and Mt. View RV Park which "most likely would have resulted in a future economic benefit." (ECF No. 1 at 16.) Plaintiff, however, alleges no facts demonstrating that either Avis or Capital One knew or should have known of the existence of any of these economic relationships. Plaintiff also contends that Avis and Capital One engaged in wrongful conduct through fraud, misrepresentations and contractual breaches that disrupted these economic relationships, but does not explain how such wrongful conduct interfered with the relationships with Academy Mortgage, Credit one and Mt. View RV Park and cause him economic harm. Thus, Plaintiff fails to state a claim for negligent interference with prospective economic relations against Defendants.

## V. CONCLUSION AND ORDER

The Court finds that Plaintiff's complaint states cognizable claims for breach of contract against Avis and Capital One; defamation against ARI; and intentional infliction of emotional distress against Avis, Davis, and ARI. Plaintiff's complaint, however, fails to state any other cognizable claims against the remaining defendants.

14

Plaintiff can now proceed on the cognizable claims against Avis, ARI, Davis, and Capital One; file an amended complaint; or stand on the current complaint subject to recommendations to the District Judge to dismiss the remaining claims and defendants consistent with this order.

Plaintiff is instructed to consider the standards set forth in this order and to file an amended complaint if he believes his claims are cognizable. If Plaintiff decides to file an amended complaint, he is advised that an amended complaint supersedes the original complaint, *Lacey v. Maricopa Cnty.*, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
    a. File a First Amended Complaint, which the Court will screen in due course;
    b. Notify the Court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the claims found cognizable by this order; or
    c. Notify the Court in writing that he does not agree to go forward on only the claims found cognizable by this order or file an amended complaint, in which case the Court will recommend the conclusions of this order to the District Judge.
2. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:17-cv-00211-DAD-EPG; and,

\\\

\\\

3. Failure to comply with this order will result in the dismissal of this action.

IT IS SO ORDERED.

Dated: **December 14, 2017**        /s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE